## In Matter of Guardianship of Watts.

(Decided March 10, 1938.)

*Messrs. Estill & Kuhn,* for appellant, Charles D. Groff, guardian.

*Messrs. Garver & Badger,* and *Mr. L. R. Critchfield,* for appellee, William Watts, ward.

SHERICK, J.   On May 14, 1937, William Watts, then incapacitated by reason of age, procured one Charles D. Groff to execute and file in the Probate Court, an application for guardianship of his person and estate. The application recites that "Watts is an incompetent person by reason of advanced age." On the back thereof Watts waived the issuance and service of process and voluntarily entered his appearance. There further appears over his signature, "and I do hereby consent to the appointment of Charles D. Groff as guardian of said William Watts according to the prayer of the application filed in said court."

On the same day a hearing was had and Watts was adjudged an incompetent. Groff, having furnished bond, was thereupon appointed guardian. This finding and order was thereafter vacated by reason of a defect of service upon a relative.

Thereafter, on May 26th, the matter came on to be heard further, not only upon the application and consent previously filed, but also upon a second application filed by one Dale Powers, which averred that

"Watts is incompetent and by reason thereof is incapable of taking care of or preserving his property." The second application was accompanied by a motion, asking that she be made a party to the proceedings. This motion was overruled. It appears from the court's journal that Watts testified. The Probate Court re-entered its prior finding of incompetency and Groff was appointed guardian. To this entry, Dale Powers, by her attorneys, excepted. William Watts did not except thereto. On the next day Watts and Powers, by the same attorneys, moved for a new trial. This motion was overruled. On the same day, both Powers and Watts gave notice of appeal to the Court of Common Pleas.

The appeal having been docketed, the guardian moved that the appeal be dismissed. This motion was overruled and the matter thereafter came on for trial *de novo* as upon an appeal on questions of law and fact. In this proceeding, Watts forsook his chosen guardian and affirmed his competency. The Common Pleas Court found that Watts was not an incompetent and refused to appoint a guardian. We are told in oral argument that Dale Powers sat throughout the trial at the ward's trial table, but that she did not testify. From the adverse judgment of the Common Pleas Court the guardian appeals on questions of law, the first of which is whether the Common Pleas Court erred in finding against the appellant on his motion to dismiss the appeal on questions of law and fact. The second is whether the Common Pleas Court's judgment on the facts is against the manifest weight of the evidence.

In view of what shall be hereinafter said it should be kept in mind that no bill of exceptions was made and filed containing the evidence presented in the Probate Court, and that the appeal perfected from the Probate to the Common Pleas Court was not on a question of

law in conformity to the permissive terms of Section 12223-3, General Code.

Section 12223-3, General Code, prescribes that "every final order * * * may be reviewed as hereinafter provided, unless otherwise provided by law, except that appeals from judgments of Probate Courts * * * upon questions of law and fact shall be taken in the manner now provided for in General Code Sections 10501-56 to 10501-61, inclusive * * *."

As the right of appeal is purely statutory, the terms of Section 10501-56, General Code, and the construction to be placed thereon, is highly important. The section in its entirety provides:

"Appeal may be taken to the Common Pleas Court, by a person against whom it is made, or whom it affects, from any order, decision or judgment of the Probate Court in settling the accounts of an executor, administrator, guardian and trustee, or of assignees, trustees or commissioners of insolvents; from an order removing or refusing to remove an executor, administrator, guardian, assignee, trustee or other officer appointed by the Probate Court; or in proceedings for the sale of real estate to pay debts; or to change the allowance made by appraisers of an estate to a widow, minor child or children, for a year's support; or against one suspected of having concealed, embezzled or conveyed away the property of dead persons; or in cases for the completion of real contracts, or in the administration by assignees, trustees or commissioners, of insolvent estates; or in proceedings to appoint guardians or trustees f~r idiots, lunatics, imbeciles or drunkards. The cause so appealed shall be tried, heard and decided in the Court of Common Pleas in the same manner as though the Court of Common Pleas had original jurisdiction thereof."

The effective date of this section was January 1, 1932. As a part of the same act, Sections 10507-1 and

10507-2, General Code, were adopted. The first portion of the last named section provides for the appointment of guardians. It reads as follows:

"When found necessary, the Probate Court of any county on its own motion or on application by any interested party, shall appoint a guardian of the person, or of the estate, or of both, of a minor, incompetent (except that if the incompetency be due to physical disability or infirmity the consent of the incompetent must first be obtained), habitual drunkard, idiot, imbecile or lunatic; or a guardian of the estate of a confined person; provided the person for whom the guardian is to be appointed be a resident of the county, or has a legal settlement or residence therein."

This section combines several prior repealed statutes, among which is Section 10989, General Code. Section 10507-1, General Code, previously adverted to, defines certain terms appearing in the new Probate Code. It says that:

"The term 'incompetent' means any person, who by reason of advanced age, improvidence, or mental or physical disability or infirmity, is incapable of taking proper care of himself or of his property * * *."

As a preliminary statement, it is remembered that that portion of repealed Section 10989, General Code, authorizing appointment of guardians for those that are physically infirm but mentally competent, was held unconstitutional in *Schafer* v. *Haller, Gdn.*, 108 Ohio St., 322, 140 N. E., 517, 30 A. L. R., 1378, by reason of the fact that it abridged one's liberty and violated Section 1 of Article I of the Ohio Constitution. It is, however, now perceived that in the reenactment of that objectionable feature the Legislature clearly cured and remedied the objection found thereto, by incorporating in Section 10507-2, General Code, the phrase "(except that if the incompetency be due to physical disability or infirmity the consent of the incompetent

must first be obtained)." Watts, having promoted and consented to the adjudication of incompetency and the guardian's appointment, cannot now be found to have been arbitrarily deprived of his liberty or property.

Section 11206, General Code, and its predecessor, Section 6407, Revised Statutes, which are now supplanted by present Section 10501-56, General Code, have frequently been the subject of court inquiry. Interpretation of these earlier provisions is of importance, due to the fact that the law embodied therein has frequently been reenacted with no substantial change. The fact is that old Section 11206, General Code, and the new Section 10501-56, General Code, are in identical language. To our notion it is significant that those who revised the new probate procedure and the Legislature, in adopting the proposal *in toto,* did not incorporate therein a provision to the effect that appeals might be prosecuted from proceedings to appoint guardians for incompetents. Neither was it seen fit to include a provision relating to appeals from the appointment of guardians for minors within its terms. When the successive amendments of Section 6407, Revised Statutes, are examined, it is found that the Legislature saw fit to include "drunkards" within its scope. At no time, however, were minors or incompetents ever included within the section as it was then enacted. There was, without doubt, a reason for their exclusion. ,

Appellees assert that Section 10501-56, General Code, pertains to the remedy, and that Section 10214, General Code, commands its liberal interpretation. This general proposition is recognized. But it must be remembered that Section 10501-56, General Code, is also jurisdictional in its application in that, in certain matters, it confers jurisdiction in appeals *de novo* upon Courts of Common Pleas. It follows with equal certainty that jurisdictional statutes must be and are

strictly construed. It has been repeatedly recognized that inferences can only be drawn from that which is expressed and not from that which is left unsaid. If the legislative intent was purposeful omission, then the maxim *"expressio unius est exclusio alterius"* has direct application.

As early as *Brigel* v. *Starbuck,* 34 Ohio St., 280, the court in its consideration of a case which involved the sole question as to the person who should administer an assignment, adopted the rule of strict construction. At page 287 of that opinion appears the following:

"An examination of our legislation and decisions shows that it has been the general policy in this state not to permit an appeal from an order appointing or removing a trustee, and that this extends to guardians, executors, and administrators. * * * The exception as to an appeal from the appointment of a guardian for a lunatic or an idiot, made, doubtless, by reason of the gravity of the proceeding and its effect upon the person, estate, and family of the ward, tends to prove the general rule in this state, and would seem to require that those who assert other exceptions should be able to point out some provision in terms warranting the appeal.

"It is, indeed, a recognized principle that general words ['any order, decision, or decree,' as Section 6407, Revised Statutes, then read] in a statute granting appeals will, ordinarily, not be extended to matters resting in the discretion of the court [which the probate court possesses in the selection of guardians], or to judgments, orders, or decrees of an interlocutory character. To render the decision of orders of that sort appealable, express provision must be made, or words must be employed from which it is reasonably certain that such was the intention."

The same rule of strict construction is followed in *Browne* v. *Wallace,* 66 Ohio St., 57, 63 N. E., 588, and

in *Collins, Exr.,* v. *Millen,* 57 Ohio St., 289, 48 N. E., 1097. See also *Miller* v. *Miller, Admr.,* 3 Ohio App., 143, and *Luburg* v. *Luburg,* 13 Ohio App., 220, both of which hold that the statute is not broad enough to include an appeal from the appointment of an administrator. In *Devers* v. *Schreiber, Exr.,* 50 Ohio App., 100, 197 N. E., 493, Section 10501-56, General Code, is held insufficient to permit an appeal from an order of the Probate Court dismissing a petition for leave to file a claim against a decedent's estate.

Appellee points to the case of *Bank & Trust Co., Exr.,* v. *Western Union Telegraph Co.,* 79 Ohio St., 89, 86 N. E., 478, 128 Am. St. Rep., 675, in support of his right to appeal. This case pertained solely to the right of one to attack the appointment of an administrator collaterally. The question of one's right to appeal from an order of appointment was not before the court. What was therein said was, as said by Judge Pollock, in *Luburg* v. *Luburg, supra,* "wholly obiter, and was made, no doubt, by the learned jurist without having fully considered at that time the statutory provisions giving a right of an appeal from the judgments and orders of the Probate Court to the Common Pleas Court."

It is true that in *Trumpler, Admr.,* v. *Royer,* 95 Ohio St., 194, 115 N. E., 1018, the court did say that Section 10214, General Code, required that repealed Section 11206 be construed liberally because it was remedial. We do not find, however, that the court therein considered its early adjudications to the contrary. At least the principle long approved of was not overruled. In that case attorneys successfully defended a will contest. The administrator *de bonis non* refused them compensation for their services. The attorneys petitioned the Probate Court for an allowance for the services rendered. Upon hearing, an allowance was made. From this order an appeal was taken to the Common

Pleas Court. It was held that an appeal was permissible. The court determined three things: First, that the attorneys were persons against whom the order was made and whom it affected; second, that it was the duty of the court to determine the value of the services; and third, that inasmuch as the administrator was liable, a determination and adjustment of the claim was necessary in order that a settlement of the estate might be effected. It appears to this court that the subject upon which this appeal was predicated may, with ease, be found expressed within the language of the statute, and that the theory of liberal construction was hardly necessary. The case appears to have been decided upon authority of *McMahon, Admr.*, v. *Ambach & Co.*, 79 Ohio St., 103, 86 N. E., 512, which was not decided upon the theory of liberal construction, which theory is not even mentioned therein, but was decided upon the theory that the matter was clearly within the statute in settling the accounts of an administrator.

It is held in *Romell* v. *Romell*, 18 Ohio App., 31, under the rule of liberal interpretation and upon authority of the *Trumpler case, supra*, that an appeal *de novo* might be prosecuted to the Court of Common Pleas from an order of the Probate Court refusing to appoint a guardian for an alleged incompetent. With the reason and conclusion of this case we do not agree.

If appointments of administrators, executors and guardians of incompetents and minors are to be made the subject of appeal, such should be done by legislative act and not by court-made law. Our present statutes require that the estates of decedents be fully settled within a limited time. If such appeals be countenanced, final settlement will be delayed. Estates will be dissipated and assets lost through lack of a proper custodian during the controversy as to who shall administer the funds. Even the Probate Court's pre-

rogative of discretion in the appointment of these officers may be taken from it. We think that the legislative purpose to deny the right of appeal on questions of law and fact in certain cases is clearly manifest in the omission of these subjects from the new Probate Act. It recognized by its enactment of Section 10507-2, General Code, Section 10989, its predecessor, having been held unconstitutional in the *Schafer case, supra,* with its present exception of requiring the incompetent's consent, which removes the objectionable feature, that it was the state's policy to protect the person and estate of aged and physically infirm people, who, although mentally competent, felt themselves unable to properly care for themselves. Such a course is far, better than turning them loose to be preyed upon by designing people or to cause them to resort to attorneys in fact for protection. The Probate Court is designed to see to the protection of those who cannot care for themselves. It should be left unfettered in that field.

In the presented controversy is found a case wherein one has invoked the jurisdiction of a court, and, upon his procurement and with his consent, has caused a court to enter a consent decree or order in his favor, to which he did not object or except. On the next day, we find him joining with one not a party to the proceeding, the very one we are told that guardianship was to shield him against, in a motion for a new trial and in an appeal from a finding in his favor. The fact is that he twice invoked the jurisdiction of the Probate Court. He has either trifled with that court's dignity or manifested that instability or lack of competency which, without doubt, prompted the Probate Court to declare him an incompetent. Examination of the application for guardianship filed by Dale Powers is of interest. It recites that Watts is an incompetent. Dale Powers asks that she be appointed. The instrument

is sworn to. It is evident why she did not testify in the Common Pleas Court. It appears to this court that the entire controversy is engendered by a disappointed applicant who would control the Probate Court's discretion. A reviewing court should have no desire, since it has no right or authority, to control that discretion in this kind of an appeal.

One further thought. It has always been this court's understanding that consent decrees may not be attacked, except for fraud, mistake, or absence of real consent in their procurement. The motion for a new trial as filed in the Court of Probate does not contain any one of these grounds. Neither is it intimated in oral argument that any such ground did, in fact, exist. Grounds for attack being wanting, the appeal should not have been countenanced.

Inasmuch as we hold that the cause was not appealable to the Common Pleas Court, the weight of the evidence may not be considered. The judgment of the Common Pleas Court is reversed and the cause remanded to the Probate Court.

*Judgment reversed and cause remanded.*

MONTGOMERY, P. J., and LEMERT, J., concur.